# Order

**Michigan Supreme Court**
**Lansing, Michigan**

June 5, 2009

138201

PEOPLE OF THE STATE OF MICHIGAN,
       Plaintiff-Appellant,

v

THOMAS WAYNE RUSSELL,
       Defendant-Appellee.

_____/

Marilyn Kelly,
*Chief Justice*

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
*Justices*

SC: 138201
COA: 264597
Oakland CC: 04-199751-FH

On order of the Court, the application for leave to appeal the December 11, 2008 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

WEAVER, J. (*dissenting*).

I dissent from the majority's denial order in this case. I would grant plaintiff's application for leave to appeal.

CORRIGAN, J. (*dissenting*).

I dissent from this Court's order denying the prosecution's application for leave to appeal. This case presents the jurisprudentially significant question whether a criminal defendant can be scored points under offense variable (OV) 10 for "predatory conduct" directed at a "vulnerable victim" when the "victim" is actually a police officer posing as a child on the Internet.

Defendant met Kelly, whom he believed was a fourteen-year-old girl, in an Internet chat room. They had several sexually explicit conversations after which defendant sent nude photographs of himself to Kelly. He eventually arranged to meet with Kelly for the purpose of engaging in sexual activity. Kelly was actually a special agent for the Attorney General. Following a jury trial, defendant was convicted of child sexually abusive activity, MCL 750.145c(2), use of the Internet to communicate with

another to commit child sexually abusive activity, MCL 750.145d(1)(a), and three counts of using the Internet to distribute obscene material to a minor, MCL 750.145d(1)(a).

Over defendant's objection at sentencing, the trial court scored 15 points under OV 10. Defendant appealed his sentence, claiming error in that scoring decision. The Court of Appeals affirmed. *People v Russell*, unpublished opinion per curiam of the Court of Appeals, issued February 8, 2007 (Docket No. 264597). Defendant sought leave to appeal in this Court. We held the application pending the decision in *People v Cannon*, 481 Mich 152 (2008), then remanded to the Court of Appeals for consideration in light of *Cannon*. The Court of Appeals vacated defendant's sentence and remanded for resentencing. *People v Russell* (*On Remand*), 281 Mich App 610 (2008). The prosecutor seeks leave to appeal in this Court. Because this case presents a jurisprudentially significant issue, I would grant the application.

The instructions for scoring OV 10 are set forth in MCL 777.40, which provides, in relevant part:

> (1) Offense variable 10 is exploitation of a vulnerable victim. Score offense variable 10 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> (a) Predatory conduct was involved                    15 points
>
> (b) The offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status                    10 points
>
> * * *
>
> (d) The offender did not exploit a victim's vulnerability          0 points
>
> (2) The mere existence of 1 or more factors described in subsection (1) does not automatically equate with victim vulnerability.
>
> (3) As used in this section:
>
>  (a) "Predatory conduct" means preoffense conduct directed at a victim for the primary purpose of victimization.
>
>  (b) "Exploit" means to manipulate a victim for selfish or unethical purposes.
>
>  (c) "Vulnerability" means the *readily apparent susceptibility* of a victim to injury, physical restraint, persuasion, or temptation. [Emphasis added.]

The Court of Appeals stated in its initial opinion:

> OV 10 scores points for "[e]xploitation of a vulnerable victim." MCL 777.40. OV 10 is scored at 15 points for "[p]redatory conduct," defined as "preoffense conduct directed at a victim for the primary purpose of victimization." MCL 777.40(1)(a). MCL 777.40(3)(a). Here, defendant, who believed he was dealing with a 14-year[-]old girl named "Kelly," indicated that he wanted to take "Kelly" to "someplace where you aren't going to run into people you know," and told "Kelly" to "save . . . skipping [school] for when I come to see you." Defendant also admitted to police that he had planned to take "Kelly" to a hotel in Canton until 3:30 p.m., at which time he thought "she" would have to be home. Further, defendant's intention to engage in sexual activity with "Kelly" was clear from both his online chats with "her" and his admissions to police, as well as Ondejko's discovery of condoms and personal lubricant in defendant's rental truck at the time of defendant's arrest. Therefore, the evidence demonstrates that defendant arranged for a situation in which he could engage in sexual activity with "Kelly" at times and places where "Kelly" would be isolated and secluded, and thus, vulnerable. Given that the timing and location of a sexual assault are relevant factors in assessing preoffense predatory conduct, *People v Witherspoon*, 257 Mich App 329, 336, 670 NW2d 434 (2003), the trial court did not abuse its discretion in assessing 15 points for OV 10. [*Russell*, *supra* at 5.]

In *Cannon*, we concluded that "points should be assessed under OV 10 only when it is readily apparent that a victim was 'vulnerable,' i.e., was susceptible to injury, physical restraint, persuasion, or temptation." *Cannon*, *supra* at 158. We explained "predatory conduct" as follows: "A lion that waits near a watering hole hoping that a herd of antelope will come to drink is not engaging in conduct directed at a victim. However, a lion that sees antelope, determines which is the weakest, and stalks it until the opportunity arises to attack it engages in conduct directed at a victim." *Id*. at 160.

The Court of Appeals concluded on remand that "regardless of an offender's subjective intent, if no vulnerable victim was in fact placed in jeopardy or exploited by an offender's actions, OV 10 does not apply." *Russell*, *supra* at 615. The Court reasoned:

> Under the analysis of *Cannon*, regardless of defendant's intent, his conduct did not place any vulnerable victim in jeopardy because there was, in fact, no vulnerable victim to be jeopardized. The person with whom defendant communicated was not a vulnerable 14-year-old girl named "Kelly"; he was, instead, an adult special agent. Such a person would not qualify as a vulnerable victim under the factors set out in *Cannon*. *Id*. at 158-159. We conclude that, under these circumstances, no points can be assessed for OV 10. [*Russell*, *supra* at 615.]

The court also refused to score points under OV 10 because "predatory conduct" requires "preoffense conduct," MCL 777.40(3)(a). It saw no preoffense conduct here because "[d]efendant's interactions on the Internet with the person he believed to be a 14-year-old girl named 'Kelly' constituted the offenses themselves . . . ." *Id*. at 616 n 2.

I would grant leave to consider the prosecution's argument that defendant's conduct was "predatory" within the meaning of MCL 777.40(3)(c) because he sought and singled out a specific victim over the Internet. He believed that, as a 14-year-old girl, Kelly was especially vulnerable to his advances. Defendant's conduct was similar to the preoffense conduct involved in *People v Kimble*, 252 Mich App 269 (2002), where the Court of Appeals held that the defendant, who drove around looking for a victim with particular characteristics, was correctly scored 15 points for predatory conduct.[1] At the time defendant sought his victim on the Internet, Kelly's "susceptibility . . . to injury, physical restraint, persuasion, or temptation" was "readily apparent" to defendant, even though he turned out to be mistaken. "Readily apparent" suggests that it is a defendant's intent to exploit one who is obviously vulnerable—in other words, his subjective belief that a victim is vulnerable—rather than the victim's actual vulnerability, that matters for purposes of scoring this offense variable.[2] While some offense variables, such as OV 3 (physical injury to a victim), MCL 777.33, and OV 4 (psychological injury to a victim), MCL 777.34, are designed to capture the extent of the harm to the victim or victims, others, like OV 6 (intent to kill or injure another individual), MCL 777.36, are designed to punish the defendant for his conduct or intended conduct, regardless of its effect on the victim. The statutory language suggests that OV 10 falls into the latter category.

That statutory definition requires only that the victim have a "readily apparent susceptibility"—here, the perceived youth and gullibility of the 14-year-old victim. The appearance of susceptibility is the statutory measure because the offense variable examines the defendant's actions in manipulating the defendant's vulnerability, not the actual injury to the victim.

---

[1] In *Kimble*, *supra* at 274-275, the "defendant and his accomplices drove around for an hour, looking for a car to steal so they could remove and sell the wheel rims. . . . [W]hen [they] saw the victim driving a car with valuable rims, they followed the victim home, watched the victim pull into the driveway, and shot the victim in order to steal the car." The court held that the "[d]efendant's preoffense behavior in seeking out a victim and following this victim home for the specific purpose of committing a crime against her was clearly predatory within the meaning of the statute." *Id*. at 275.

[2] *Random House Webster's College Dictionary* (2001) defines "apparent" as follows: "1. readily seen; open to view"; "2. capable of being easily understood; obvious"; "3. according to appearances; ostensible rather than actual."

I tend to concur with the Solicitor General's view as set forth in the application for leave to appeal. OV 10 is directed at the malice of defendant's conduct, not the victim's injury. *Cannon* did not resolve whether there must be an actual rather than a perceived victim; I would grant leave to clarify this jurisprudentially significant issue.

The interpretation of OV 10 I would propose is consistent with the rule concerning the elements of attempt offenses involving conduct over the Internet. In *People v Thousand*, 465 Mich 149; 631 NW2d 694 (2001), where the purported victim was actually a police officer posing as a minor on the Internet, this Court held the trial court erred in dismissing a charge of attempted distribution of obscene material to a minor based on the doctrine of legal impossibility "[b]ecause the nonexistence of a minor victim does not give rise to a viable defense to the attempt charge in this case." *Id*. at 166. It was the defendant's intent that was dispositive. *Id*. Similarly, it appears that defendant's conduct here meets the definition of "predatory conduct" in OV 10 notwithstanding his mistake about the actual characteristics of the victim.

The Court of Appeals on remand gave an unnecessarily crimped view of our holding in *Cannon*. If we deny leave to appeal, the Court of Appeals decision will render a classic example of predatory conduct—seducing minors for sexual abuse over the Internet—immune from OV 10 when the perpetrator is prosecuted by units targeting Internet predators. I would not so cripple this essential investigative technique when the decision below does not square with the plain statutory language of OV 10. I would grant leave to appeal.

YOUNG, J., joins the statement of CORRIGAN, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 5, 2009

Corbin R. Davis

Clerk

p0602